UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH TRAYNOR, | : | |
| | : | C.A. No. 06-441 |
| Plaintiff, | : | |
| | : | |
| v. | : | TRIAL BY JURY |
| | : | REQUESTED |
| DAVY LIU d/b/a DAVY LIU STUDIO | : | |
| GALLERY, | : | |
| | : | |
| Defendant. | : | |

<u>MOTION FOR A PROTECTIVE ORDER</u>

Defendant Davy Liu (hereinafter "Defendant") moves, pursuant to Rule 26(c), for a

Protective Order from the Court to allow the deposition of Defendant and his wife, Joan Huaag

Liu, to proceed via video conference provided that Plaintiff's attorney conducting the deposition

and Defendant's attorney remain in Delaware, or, in the alternative, to require Plaintiff, Elizabeth

Traynor (hereinafter "Plaintiff"), to pay the reasonable travel expenses for Defendant's counsel to

attend the deposition in California.  In support of this motion, the Defendant states as follows:

1.     Plaintiff filed this action for copyright infringement and breach of contract in

Delaware on July 20, 2006.  Although this action was filed in Delaware, the events relating to

the claim occurred in California.  Defendant filed a motion to dismiss for lack of personal

jurisdiction and improper venue on October 16, 2006.  The court has yet to rule upon that

motion.

2.     On March 21, 2007, Plaintiff's counsel noticed the deposition of Defendant and

Defendant's wife.  The notice to depose Defendant and the subpoena to depose Defendant's wife are attached as "Exhibit A".  These depositions are scheduled to take place in Irvine, California on April 4, 2007.  Plaintiff's counsel has an office in California and has filed a motion for admission pro hac vice so that a member of the California bar may take both depositions in California.

3.      Defendant's counsel has its sole office in Wilmington, Delaware.  Should the deposition go forward in California, Defendant would incur the expense of having his Delaware counsel travel to California.

4.      Pursuant to Rule 26(c), the Court may issue a Protective Order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in the discovery process.  A motion for a Protective Order shall be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action...".

5.      Pursuant to Rule 26 (b)(2), this Court may alter the "extent of use of the discovery methods...[if] the discovery sought is...obtainable from some other source that is more convenient, less burdensome, or less expensive...".

6.      In *Cacciavillano v. Ruscello, Inc.,* 1996 WL 745291, Huyett, J. (E.D. Pa., December 23, 2006)(Exhibit B), plaintiff's counsel filed a motion for a protective order regarding an out-of-state deposition noticed by defendant's counsel.  Plaintiff's counsel asserted that defendant's counsel's desire to depose a witness face-to-face and out-of-state (in Arizona), creating travel expenses for plaintiff's counsel, constituted an unreasonable burden and expense.  Plaintiff's counsel offered to have the deposition taken by teleconference instead but defendant's counsel insisted on a face-to-face deposition.  The court ruled that because defendant's counsel

insisted upon having the deposition out-of-state and face-to-face, defendant had to pay the travel expenses of plaintiff's counsel.

7.      Plaintiff's counsel and Defendant's counsel discussed and originally agreed to hold the deposition via video conference so that both attorneys could remain in Delaware and Defendant could be deposed from his location in California. A letter from Defendant's counsel to Plaintiff's counsel dated February 20, 2007 reflects this arrangement and is attached as "Exhibit C".

8.      At some point thereafter, Plaintiff's counsel unilaterally decided not to go forward with the video conference format and instead chose to have an attorney in their California office conduct the deposition in person.

9.      In response to this change, Defendant's counsel spoke with Plaintiff's counsel and requested that the depositions be conducted by video conference provided that both attorneys are in Delaware and that the deponents are in California. Plaintiff's counsel rejected that proposal. Defendant's counsel also offered to permit the depositions to occur in California, provided that Plaintiff pay Defendant's counsel's reasonable travel expenses. Plaintiff's counsel rejected that proposal as well.

10.     It is submitted that it is significantly less expensive and less burdensome to have the depositions of Defendant and his wife conducted by video conference. Should Plaintiff's counsel conduct the deposition in person in California, Defendant would incur significant expenses in order to have his Delaware counsel attend the deposition. It is also submitted that in order to ensure fairness in the discovery process, both parties' attorneys should conduct the video conference from Delaware.

WHEREFORE, for the reasons discussed above, Defendant Davy Liu respectfully

requests that the Motion for a Protective Order be granted.

Respectfully submitted,

Stephen P. Casarino, Esq.
Del. Bar ID No. 174
Sarah C. Brannan, Esq.
Del. Bar ID No. 4685
CASARINO, CHRISTMAN & SHALK, P.A.
800 N. King Street, Suite 200
P.O. Box 1276
Wilmington, DE 19899
(302) 594-4500
Attorneys for Defendant

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

ELIZABETH TRAYNOR,                   :
                                     :       C.A. No. 06-441
                 Plaintiff,          :
                                     :
v.                                   :       TRIAL BY JURY
                                     :       REQUESTED
DAVY LIU d/b/a DAVY LIU STUDIO       :
GALLERY,                             :
                                     :
                 Defendant.          :


## ORDER

IT IS HEREBY ORDERED on _____, 2007 that Defendant's Motion for a

Protective Order is ***GRANTED*** and that Plaintiff shall conduct the deposition of Defendant and

Defendant's wife, Joan Huaag Liu, via video conference provided that the deposing plaintiff's

attorney and defendant's attorney remain in Delaware, or, in the alternative, Plaintiff shall pay

the reasonable travel expenses for Defendant's counsel to attend the deposition in California.


_____

J.

# EXHIBIT A

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

Elizabeth Traynor,                     )
                                       )
           Plaintiff                   )
                                       )     Civil Action No.    0 6 - 4   1
     v.                                )
                                       )
Davy Liu d/b/a Davy Liu Studio Gallery,)     **COMPLAINT**
                                       )     **JURY TRIAL DEMANDED**
           Defendant.                  )

## COMPLAINT

This is an action for copyright infringement and violation of Common Law

prohibitions against breach of contract.

Plaintiff, Elizabeth Traynor ("Traynor"), hereby petitions this Court to preliminary

and permanently enjoin Defendant, Davy Liu ("Liu"), from copying of Plaintiff's

photographic and textual works, and reproducing, distributing, publishing and/or displaying

such works. In support of her Complaint, Plaintiff avers as follows:

## JURISDICTION AND VENUE

1.      Plaintiff Elizabeth Traynor ("Traynor") is an individual residing at 2109

Silverside Road, Wilmington, Delaware, 19810.

2.      Upon information and belief, Defendant, Davy Liu, ("Liu") is a resident of

California, who does business under the name Davy Liu Studio Gallery ("Gallery"), located

at 3275-K Laguna Canyon Road, Laguna Beach, California, 92651.

3.      This Court's jurisdiction over matters arising under the copyright laws is

proper under 28 U.S.C. § 1338(a). Furthermore, this Court has original jurisdiction to hear

08/08/06  TUE 07:24 FAX 9099423425          STATE-FARM                    ☑004
08/07/2006 15:03 FAX                                                      ☑004

breach of contract claims that are joined with substantial and related claims under the copyright laws, pursuant to 28 U.S.C. § 1338(b), and supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367(a).

4.  Traynor is a resident of Delaware, and Liu sought out Traynor's services in Delaware, and made representations to Traynor while she was still a resident of Delaware that caused her to resign her position as Illustration Department head and full-time teacher with the Delaware College of Art to partner with Liu, and to perform services on behalf of the partnership in Delaware as well as in California.  Further, Liu's infringing activities occurred in Delaware and elsewhere.  Accordingly, on information and belief, Liu is subject to the personal jurisdiction of this Court.

5.  An actual controversy between the parties exists in this jurisdiction under 28 U.S.C. § 2201.

6.  Venue in this District is proper pursuant to 28 U.S.C. § 1391 *inter alia*, because some of the acts complained of occurred in this District including that Plaintiff was targeted in this District and performed services for Defendant in this District, and Plaintiff Traynor resides here.

## COUNT 1 –
## COPYRIGHT INFRINGEMENT, 17 U.S.C. §501 ET SEQ.

7.  Traynor repeats and realleges the allegations contained in the preceding paragraphs in this Complaint as though the same were fully rewritten herein.

8.  Traynor is a skilled artist and the creator of numerous works of authorship, including works of art, photographs, written works, and other creative works.  Traynor had

been a full time teacher of art for many years, and, until July 2004, headed the Illustration Department at the Delaware College of Art and Design. In addition to her knowledge and talent as an artist, Traynor has considerable background in the "business of art", having an understanding of the business issues involved in running studios and art galleries.

9.    In May 2004, Traynor and Liu began discussing Traynor's management of the Davy Liu Studio Gallery which opened in 2004. Liu continued pursuing a partnership with Traynor and, in June 2004, suggested Traynor visit the Gallery in July 2004 to explore that opportunity. Traynor agreed to visit the Gallery in July.

10.    Prior to visiting the Gallery in July, Liu requested Traynor's assistance in editing a promotional piece for the Gallery. Because English is not Liu's first language, Traynor found it necessary to re-write the text of the promotional piece.

11.    Traynor traveled to California on July 15, returning to Delaware on July 30. While in California, Traynor spent eighty-seven (87) hours working in the Gallery, providing assistance in various areas including organizing the studio, organizing the administration areas of the studio, teaching Liu about business aspects of running the Gallery, and editing, proofreading, designing and writing promotional materials for the Gallery and for the August 21 show. Traynor paid her own airfare and car rental costs, and received no payment for the many hours she worked at the Gallery.

12.    During the July 2004 visit, Liu offered Traynor a partnership in the Gallery, and suggested that she be given the title of director of the Gallery, with the expectation she would take over complete control of the Gallery business within a year. The parties agreed Traynor would move from Delaware to California in early October 2004. Liu stated Traynor

08/08/06   TUE 07:25 FAX 9099423425         STATE-FARM                                        ☑006
08/07/2006 15:03 FAX                                                                          ☑006

would be provided with business cards reflecting her position as "Gallery Director" following her relocation to California.

13.    As compensation for her efforts, Liu agreed that Traynor would receive 10% of the price of the paintings sold at the Gallery, beginning with the August 21, 2004 show. In addition, Traynor would be given studio space in the Gallery studio in order to allow her to continue her own artistic endeavors. Liu also agreed to provide Traynor with $1,000 as an advance to cover her moving expenses from Delaware to California.

14.    On July 22, 2004, Traynor accepted Liu's offer of partnership, and based on his promises and representations, resigned her position with the Delaware College of Art and Design in order to prepare for her move to California in the fall of 2004 to become Director of the Gallery.

15.    Because of her role as Liu's partner and the Director of the Gallery, the parties agreed it was important for Traynor to help prepare for and attend the August 21, 2004 Gallery show. Liu bought a plane ticket for Traynor for this purpose, although Traynor paid for her own car rental and other expenses while in California.

16.    Traynor still lived in Delaware prior to the August 21, 2004 show. Leading up to the August 21, 2004 show, Liu called upon Traynor to provide assistance in creating and editing promotional materials for the Gallery, and in particular for the August Gallery show. For example, at Liu's behest, working from Delaware, Traynor created a press release for the August 2004 "Pros Unveiled" Gallery show. A copy of the press release, bearing Traynor's copyright notice, was forwarded to Liu upon its completion.

08/08/06  TUE 07:25 FAX 9099423425        STATE-FARM                    ☑007
08/07/2006 15:03 FAX

17.    On August 18, 2004, Traynor returned to California to undertake the duties of the Director of the Gallery and prepare the Gallery for its inaugural event on August 21. Traynor exerted considerable efforts in preparation for the event, spending more than 40 hours on various tasks ranging from supervising employees to preparing and hanging paintings to cleaning, shopping for supplies, and preparing food and beverages for the event.

18.    In the days leading up to the August 21 Gallery show, and during the event itself, Traynor was introduced by Liu as the new Gallery director to everyone coming to the Gallery, including the participating artists.

19.    Subsequent to the August 21 Gallery show, Traynor returned to Delaware to prepare for her move to California. While still in Delaware, Traynor devoted significant creative energies and time to designing and editing promotional materials for the Gallery, including creating new text for such materials. Among the works authored by Traynor while in Delaware were: copy for a full color brochure promoting the Gallery; biographies of the artists in the Gallery; and a mission statement for the Gallery ("Statement").

20.    During the August 21, 2004 Gallery show, Traynor took 71 photographs of the Gallery and of the people attending the show ("Photographs"). The Photographs were subsequently downloaded to Liu's computer, and copies were uploaded to and displayed on the Davy Liu Studio Gallery's website, located at www.davyliu.com ("Website"). The Statement was similarly posted on the Website.

21.    Traynor moved to California on October 3, 2004, and began working at the Gallery on October 5, 2004. Traynor worked full time at the Gallery for nearly three weeks,

08/08/06  TUE 07:25 FAX 9099423425          STATE-FARM                                    ☑008
03/07/2006 15:04 FAX                                                                         ☑008

spending more than 40 hours each week doing Gallery business, with additional hours each week spent in unpacking, setting up and working at her personal illustration business.

22. On October 25, 2004, Traynor ceased working for Liu due to irreconcilable differences with Liu and began to move her studio equipment out of the Gallery studio space. On November 3, 2004, Traynor requested full payment of the compensation due her, including the promised funds to cover her moving expenses. In response to her request, Liu informed Traynor that he would not be paying her "one cent".

23. Traynor returned to Delaware on December 15, 2004, where she continues to reside.

24. On November 19, 2004, Traynor filed applications for registration of the copyrights in the Photographs and in the Statement and other promotional materials (collectively hereinafter the "Works") with the U.S. Copyright Office. The Photographs, depicting the Gallery opening and reception, were granted Registration No. VA-1-290-747. The collection of promotional materials, including the Statement, was granted Registration No. TX-6-156-050. Copies of these registrations are attached as Exhibit "A". Copies of the Works are attached as Exhibit "B".

25. On information and belief, the August 21, 2004 show generated approximately $6,000 in sales that day. Additional sales, of an amount believed to be approximately $6,000, were made subsequent to August 21 and prior to October 25, 2004.

26. Traynor was never paid for her work at the Gallery, and never received the commission of ten percent (10%) of sales, or the promised $1,000 advance.

08/08/06  TUE 07:25 FAX 9099423425          STATE-FARM                                    ✍ 009
08/07/2008  13:04 FAX                                                                    ✍ 009

27.     Traynor is currently and at all relevant times has been the author and sole proprietor of all right, title, and interest in and to the copyrights in the Works. Traynor has produced, distributed and protected the Works in strict conformity with the provisions of the Copyright Act of 1976, and all other laws governing copyrights.

28.     Despite offering to compensate Traynor for her services as Director of the Gallery, Liu never paid Traynor. Traynor was never an employee of Liu or the Gallery. At all times Traynor has been an independent contractor for Liu.

29.     There is no agreement, written or oral, between Traynor and Liu governing Liu's use of the Works on the Website or in the Gallery.

30.     In December 2005, Plaintiff learned that Defendant Liu was using and displaying at least eleven (11) of the Photographs, along with the Statement, on the Website. The mission statement posted on the Website was identical in content to the Statement created by Traynor. The photographs posted on the Website are identical electronic copies of the Photographs.

31.     On January 31, 2005, Plaintiff's attorney sent a letter to Liu advising him of Plaintiff's copyrights in the Photographs and Statement, and Liu's infringement of the same, as well as the penalties that could be faced by Liu as a result of his infringing activities.

32.     Following conversations with Plaintiff's attorney, Defendant's attorney responded by letter dated February 8, 2005 advising that the photographs had been removed from the Website.

08/08/06   TUE 07:26 FAX 9099423425            STATE-FARM                                          ☒010
08/07/2006 15:04 FAX                                                                               ☒010

33.     Although it appeared that the infringing photographs had been removed from the Website at that time, the Statement remained on the Website and continued to be prominently displayed therein. Further, on information and belief, Liu continued to reproduce and distribute written materials, including the Gallery's color brochure, containing an exact copy of the Statement.

34.     Traynor recently became aware that Defendant had again posted at least seventeen (17) of the Photographs on the Website, and as of the date of this Complaint, twenty-one (21) Photographs are on display on the Website.

35.     As of the date of this Complaint, Defendant continues to engage in the unauthorized reproduction, display, distribution and transmission of the Works, both within this District and without.

36.     Liu's reproduction of the Works, display of the Works on the Website, and the distribution and transmission of the Works through the internet is without Traynor's permission, and constitutes infringement of Traynor's rights in such Works.

37.     By the actions alleged above, Defendant has infringed and will continue to infringe Plaintiff's copyrights in and relating to the Works by reproducing, distributing and displaying works which comprise or which contain direct copies of one or more of Plaintiff's copyrighted Works.

38.     To date, Traynor has never received payment for her work at the Gallery or any licensing fee for the right to use, display or reproduce or create derivative works from any of her Works, despite making repeated requests of Liu for the same.

08/08/06   TUE 07:26 FAX 9099423425          STATE-FARM                    ☑011
08/07/2006 15:05 FAX                                                        ☑011

39.     Defendant has reproduced, distributed and displayed copies of the Works without authorization from Plaintiff, and continues to do so.

40.     On information and belief, Defendant has profited from the unauthorized use, display and reproduction of the copyrighted Works.

41.     Defendant's unauthorized and continued use, display and reproduction of the Works constitutes copyright infringement under 17 U.S.C. § 501.

42.     Defendant's deliberate and unauthorized used of the copyrighted Works continues despite actual notice of Plaintiff's rights in the same, and therefore constitutes a willful violation of Plaintiff's rights under 17 U.S.C. § 106.

43.     Plaintiff has been and continues to be damaged by Defendant's unauthorized use of the copyrighted Works.

44.     Plaintiff is entitled to recover from Defendant the damages, including costs and reasonable attorneys' fees, Plaintiff has sustained and will sustain, and any gains, profits and advantages obtained by Defendant's acts of infringement alleged above. At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Plaintiff.

45.     Plaintiff is entitled to an injunction restraining Defendant, Defendant's agents and employees, and all persons acting in concert with him, from engaging in any further such acts in violation of the Copyright Laws.

08/08/06  TUE 07:26 FAX 9099423425              STATE-FARM                              ☑ 012

## COUNT II
## COMMON LAW BREACH OF CONTRACT

46.     Traynor repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as though the same were fully rewritten herein.

47.     Plaintiff accepted Defendant's offer of partnership, and accompanying terms of compensation, and performed services for Defendant. Plaintiff acted to her detriment based on Defendant's promises, resigning her employment in Delaware, and moving to California to continue providing services to Defendant, based on Defendant's representations that she would be compensated with a share of profits, which representations proved false.

48.     Plaintiff accepted Defendant's offer, and acted on such offer, at great personal and professional expense to Plaintiff, with financial expenditures in excess of $14,000. Additionally, Plaintiff expended great efforts, valuable time, and resources, and creative energies to assist Defendant in opening and promoting his Gallery, including but not limited to the development of original works of authorship. Defendant was and is aware that Plaintiff expected compensation for her efforts and energies.

49.     Defendant has not compensated Plaintiff and Defendant continues to benefit from services rendered by Plaintiff on Defendant's behalf. Defendant has been unjustly enriched at Plaintiff's expense.

50.     The aforesaid conduct of Defendant has caused and, if not enjoined, will continue to cause irreparable damage to Plaintiff's rights. Traynor's damages from the aforesaid unlawful actions of Defendant are not yet determined.

WHEREFORE, Plaintiff seeks the following relief:

(a)    an order declaring that Defendant has infringed and is infringing Plaintiff's copyrights and is liable therefore pursuant 17 U.S.C. § 501;

(b)    an order that Defendant has breached a contract with Plaintiff, in violation of Plaintiff's rights under the common law;

(c)    an order that Defendant has willfully violated Plaintiff's rights;

(d)    preliminary and permanent injunctive relief enjoining Defendant, his successors, assigns, transferees, and all persons acting or claiming to act on their behalf from reproducing, distributing, displaying, advertising, creating derivative works from, using or selling unauthorized copies of, the Works;

(e)    an order requiring destruction of all paper and electronic copies in Defendant's possession which use or incorporate the copyrighted Works in violation of Plaintiff's rights;

(f)    a money judgment awarding Plaintiff damages for Defendant's willful violation of Plaintiff's statutory and common law rights, including Plaintiff's actual damages, any profits attributable to infringements of Plaintiff's copyrights, and statutory damages of not more than one hundred and fifty thousand dollars ($150,000.00) for each instance of copyright infringement.

(g)    a judgment awarding Plaintiff attorneys' fees and all costs and disbursements incurred in this action (17 U.S.C. § 505);

08/08/06 TUE 07:27 FAX 9099423425    STATE-FARM    ☒ 014
08/07/2006 15:05 FAX                                         ☒ 014

(h)    a judgment to compensate and reimburse Plaintiff for the agreed-upon percentage of sales and expenses; and

(i)    such other relief as the Court deems appropriate.

Respectfully submitted,

*Patricia S. Rogowski*

Patricia S. Rogowski
Delaware Bar No. 2632
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

OF COUNSEL:
Jennifer Fraser
Connolly Bove Lodge & Hutz LLP
Suite 800
1990 M Street NW
Washington, DC 20036-3425
(202) 331-7111

CBLH 0458033.1

EXHIBIT C

# CASARINO, CHRISTMAN & SHALK, P.A.

ATTORNEYS AT LAW

800 NORTH KING STREET

SUITE 200

P.O. BOX 1276

WILMINGTON, DELAWARE 19899

———

(302) 594-4500

FAX: (302) 594-4509

STEPHEN P. CASARINO
COLIN M. SHALK
BETH H. CHRISTMAN
DONALD M. RANSOM
KENNETH M. DOSS
THOMAS P. LEFF
MATTHEW E. O'BYRNE
CHANETA BROOKS MONTOBAN
SARAH C. BRANNAN

REPLY TO OUR MAILING ADDRESS:
P.O. BOX 1276
WILMINGTON, DE 19899

February 20, 2007

Patricia Smink Rogowski, Esq.
Connolly, Bove, Lodge & Hutz LLP
1007 North Orange Street, The Nemours Building
P.O. Box 2207
Wilmington, DE 19899

Re:    Traynor v. Liu

Dear Patricia:

I understand that you have been trying to schedule the deposition of Mr. Liu by video conference in Los Angeles. As you know, Mr. Liu lives in Laguna Beach which is about an hour drive from Los Angeles. He does not want to drive to Los Angeles. Therefore, I would appreciate it if you could make arrangements to do the video conference deposition at either his studio or someplace in the Laguna Beach area.

Very truly yours,

STEPHEN P. CASARINO

SPC:pw

<u>CERTIFICATE OF SERVICE</u>

I, STEPHEN P. CASARINO,  hereby certify that I have caused to be deposited in the

U.S. Mail, postage prepaid, the 5th day of April, 2007, true and correct copies of the attached

Motion for a Protective Order, addressed to:


Patricia Smink Rogowski, Esq.
Connolly, Bove, Lodge & Hutz LLP
1007 North Orange Street, The Nemours Building
P.O. Box 2207
Wilmington, DE 19899



CASARINO, CHRISTMAN & SHALK, P.A.



Stephen P. Casarino, Esq.
Del. Bar ID No. 174
Sarah C. Brannan, Esq.
Del. Bar ID No. 4685
800 N. King Street, Suite 200
P.O. Box 1276
Wilmington, DE 19899
(302) 594-4500
Attorneys for Defendant