IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELIZABETH TRAYNOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-441-SLR |
| | ) |
| DAVY LIU, | ) |
| | ) |
| Defendant. | ) |

Patricia Smink Rogowski, Esquire, and Geoffrey A. Zelley, Esquire, Connolly, Bove, Lodge & Hutz LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Jennifer Fraser, Esquire, and Michael L. Lovitz, Esquire, Connolly Bove Lodge & Hutz LLP, Washington, D.C., and Los Angeles, California.

Stephen P. Casarino, Esquire, and Sarah C. Brannan, Esquire, Casarino, Christman & Shalk, P.A., Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: July 17, 2007
Wilmington, Delaware

ROBINSON, Judge

## I. INTRODUCTION

On July 20, 2006, Elizabeth Traynor ("plaintiff") filed the action at bar against Davy Liu ("defendant"), alleging copyright infringement under 17 U.S.C. § 501 and common law breach of contract. (D.I. 1) On October 17, 2006, defendant filed a motion to dismiss the complaint for lack of personal jurisdiction and improper venue. (D.I. 10) On April 5, 2007, defendant filed a motion for a protective order, requesting that plaintiff be required to either depose him and his wife via videoconference or pay for defendant's attorney, who is located in Delaware, to travel to California and attend the depositions in person. (D.I. 38) Finally, on May 7, 2007, plaintiff filed a motion to strike defendant's reply brief in support of his motion for a protective order, on the grounds that it had been filed four days after the applicable deadline. (D.I. 41) These three motions are currently pending before the court. The court has jurisdiction over the matter at bar pursuant to 28 U.S.C. §§ 1338 and 1367.

## II. BACKGROUND[1]

Plaintiff, who describes herself as "a skilled artist and the creator of numerous works of authorship, including works of art, photographs, [and] written work,"[2] is a resident of the State of Delaware. (D.I. 1 at ¶¶ 1, 8) Prior to July 2004, when she left her job in order to work with defendant, plaintiff "headed the Illustration Department at the Delaware College of Art and Design" ("DCAD"). (Id. at ¶ 8) Defendant, a California

---

[1] For purposes of its 12(b)(2) analysis, the court must accept as true all allegations of jurisdictional fact made by plaintiff.

[2] Plaintiff also states that, "[i]n addition to her knowledge and talent as an artist, [she] has considerable background in the 'business of art,' having an understanding of the business issues involved in running studios and art galleries." (D.I. 1 at ¶ 8)

resident, is the owner of Davy Liu Studio Gallery ("the Gallery") in Laguna Beach, California. (Id. at ¶ 2) Plaintiff and defendant first met in June 2002, "at a gathering of illustrators in New York City." (D.I. 14 at ¶ 3) Plaintiff "arranged for [defendant] to speak at the [DCAD] as part of the Visiting Artists Lecture Series, an event that was open to the public as well as the college." (Id.) According to plaintiff,

> [defendant] came to Delaware for this engagement on November 13, 2002. . . . [and] gave the lecture . . . on November 14, 2002. He stayed at [plaintiff's] house in Delaware from November 13 to 16 and November 18 to 19, 2002[,] . . . [and] received a $500 honorarium as well as airfare for the trip to the [DCAD].

(Id.)

In April 2004,[3] "[defendant] contacted [plaintiff] to request [her] assistance with various matters relating to the operation of [the Gallery]." (Id. at ¶ 4) In May 2004, plaintiff and defendant began to discuss the possibility of forming a partnership, "and, in June 2004, [defendant] suggested [that plaintiff] visit the Gallery in July 2004 to explore that opportunity." (D.I. 1 at ¶ 9) Before that visit had even taken place, defendant "requested [plaintiff's] assistance in editing a promotional piece for the Gallery."[4] (Id. at ¶ 10) Thereafter,

> [plaintiff] traveled to California on July 15, returning to Delaware on July 30. While in California, [plaintiff] spent eighty-seven . . . hours working in the Gallery, providing assistance in various areas including organizing the studio, organizing the administration areas of the studio, teaching [defendant] about business aspects of running the Gallery, and editing, proofreading, designing and writing promotional materials for the Gallery

---

[3]None of the parties' submissions mention any events occurring during the time period between November 2002 and April 2004.

[4]Plaintiff avers that, "[b]ecause English is not [defendant's] first language, [she] found it necessary to re-write the text of the promotional piece." (D.I. 8 at ¶ 10)

and for the [upcoming] August 21 show. [Plaintiff] paid her own airfare and car rental costs, and received no payment for the many hours she worked at the Gallery.

(Id. at ¶ 11) During plaintiff's visit to California, "[defendant] offered [her] a partnership in the Gallery, and suggested that she be given the title of director of the Gallery, with the expectation she would take over complete control of the Gallery business within a year." (Id. at ¶ 12) "On July 22, 2004, [plaintiff] accepted [defendant's] offer of partnership" with the understanding that,

> as compensation for her efforts, . . . [she] would receive 10% of the price of the paintings sold at the Gallery, beginning with the August 21, 2004 show. In addition, [plaintiff] would be given studio space in the Gallery studio in order to allow her to continue her own artistic endeavors. [Defendant] also agreed to provide [plaintiff] with $1,000 as an advance to cover her moving expenses from Delaware to California.

(Id. at ¶¶ 13, 14) "[B]ased on [defendant's] promises and representations, [plaintiff] resigned her position with the [DCAD] in order to prepare for her move to California in the fall of 2004[5] to become Director of the Gallery." (Id. at ¶ 14)

As the August 21 show approached, defendant asked plaintiff, who was still living in Delaware at the time,

> to provide assistance in creating and editing promotional materials for the Gallery, and in particular for the August Gallery show. For example, at [defendant's] behest, working from Delaware, [plaintiff] created a press release for the August 2004 'Pros Unveiled' Gallery show. A copy of the press release, bearing [plaintiff's] copyright notice, was forwarded to [defendant] upon its completion.

(Id. at ¶ 16) Plaintiff returned to California on August 18, 2004 in order to prepare for the August 21 show; she subsequently "exerted considerable efforts in preparation for

---

[5]Plaintiff and defendant had agreed that plaintiff would move from Delaware to California in early October 2004. (D.I. 8 at ¶ 12)

3

the event, spending more than 40 hours on various tasks." (Id. at ¶ 17) "In the days leading up to the August 21 Gallery show, and during the event itself, [plaintiff] was introduced by [defendant] as the new Gallery director to everyone coming to the Gallery, including the participating artists." (Id. at ¶ 18) During the show, plaintiff took seventy-one photographs of the Gallery and its attendees ("the photographs"). (Id. at ¶ 20) After the August 21 Gallery show, plaintiff traveled back to Delaware and began making preparations for her impending move to California.

> While still in Delaware, [plaintiff] devoted significant creative energies and time to designing and editing promotional materials for the Gallery, including creating new text for such materials. Among the works authored by [plaintiff] while in Delaware were: copy for a full color brochure promoting the Gallery; biographies of the artists in the Gallery; and a mission statement for the Gallery ("[the] [s]tatement").

(Id. at ¶ 19) Defendant subsequently uploaded the photographs and the statement onto the Gallery's website ("the website").[6] (Id. at ¶ 20)

Plaintiff moved to California on October 3, 2004 and began working at the Gallery two days later. (Id. at ¶ 21) She spent the next three weeks working at the Gallery full-time, "with additional hours each week spent in unpacking, setting up and working at her personal illustration business." (Id.) On October 25, 2004, as a result of "irreconcilable differences," plaintiff ended her working relationship with defendant and "began to move her studio equipment out of the Gallery studio space." (Id. at ¶ 22) On November 3, "[plaintiff] requested full payment of the compensation due her, including the promised funds to cover her moving expenses"; plaintiff alleges that, "[i]n response

---

[6]In November 2004, plaintiff applied for copyrights in the photographs, the statement, "and other promotional materials"; the copyrights were later granted, effective November 19, 2004. (D.I. 8 at ¶ 24; id., ex. A)

4

to her request, [defendant] informed [plaintiff] that he would not be paying her 'one cent.'" (Id.) Plaintiff moved back to Delaware on December 15, 2004 and has remained a Delaware resident since that time. (Id. at ¶ 23) According to plaintiff, she "was never paid for her work at the Gallery, and never received the commission of ten percent . . . of sales, or the promised $1,000 advance." (Id. at ¶ 26)

"In December 2005, [p]laintiff learned that [d]efendant . . . was using and displaying at least eleven . . . of the [p]hotographs, along with the [s]tatement, on the [w]ebsite." (Id. at ¶ 30) "[T]here [exists] no agreement . . . between [plaintiff] and [defendant] governing [defendant's] use of the [photographs and the statement] on the [w]ebsite or in the Gallery"; however, "[o]n January 31, 2005, [p]laintiff's attorney sent a letter to [defendant] advising him of [p]laintiff's copyrights in the [p]hotographs and [s]tatement, and [defendant's] infringement of the same." (Id. at ¶¶ 29, 31) On or about February 8, 2005, plaintiff learned that the photographs had been removed; despite this, "the [s]tatement remained on the [w]ebsite and continued to be prominently displayed therein." Plaintiff likewise alleges that defendant "continued to reproduce and distribute written materials, including the Gallery's color brochure, containing an exact copy of the [s]tatement." (Id. at ¶¶ 32, 33) The complaint also states that "[plaintiff] recently became aware that [d]efendant had again posted at least seventeen . . . of the [p]hotographs on the [w]ebsite, and as of [July 20, 2006], twenty-one . . . [p]hotographs [were] on display on the [w]ebsite." (Id. at ¶ 34)

According to plaintiff, defendant's actions have "infringe[d] [her] copyrights in and relating to the [photographs and the statement] by reproducing, distributing and displaying," without permission, plaintiff's copyrighted works. (Id. at ¶¶ 36, 37) In

5

addition, plaintiff claims that defendant's actions constituted a breach of contract under the common law. (Id. at ¶¶ 47-50) She, therefore, filed the instant lawsuit in the District of Delaware. Plaintiff avers that, although defendant is a resident of California,

> [defendant] sought out [plaintiff's] services in Delaware, and made representations to [her] while she was still a resident of Delaware that caused her to resign her position . . . with the [DCAD] to partner with [defendant], and to perform services on behalf of the partnership in Delaware as well as in California. Furthermore, [defendant's] infringing activities occurred in Delaware and elsewhere.

(Id. at ¶ 4) Therefore, she contends, "[defendant] is subject to the personal jurisdiction of this [c]ourt." (Id.) Plaintiff also maintains that "[v]enue in this [d]istrict is proper . . . because some of the acts complained of occurred in this [d]istrict[,] including that [p]laintiff was targeted in this [d]istrict and performed services for [d]efendant in this [d]istrict, and [p]laintiff . . . resides here." (Id. at ¶ 6)

## III. STANDARD OF REVIEW

### A. Personal Jurisdiction

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). To establish personal jurisdiction, a party must allege facts sufficient to satisfy two requirements, one statutory and one constitutional. See Reach & Assoc., P.C. v. Dencer, 269 F. Supp. 2d 497, 502 (D. Del. 2003). With

regard to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute. See id. As for the constitutional basis, the court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. See id.; see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

### B. Venue

A court may dismiss a lawsuit for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). However, the Federal Rules of Civil Procedure do not contain any specific venue provisions or requirements. A court, therefore, must determine whether venue is proper in accordance with the appropriate statutes when deciding a motion to dismiss for improper venue. See Albright v. Gore, Civ. A. No. 02-304-GMS, 2002 WL 1765340, at *3 (D. Del. July 31, 2002) (citations omitted). The moving party has the burden of proving that venue is improper. See id. (citing Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982)). "[I]n ruling on defendant['s] motion the plaintiff's choice of venue should not be lightly disturbed." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

## IV. DISCUSSION

### A. Personal Jurisdiction

#### 1. Applicable law

The State of Delaware's long arm statute permits the exercise of personal jurisdiction over a nonresident who:

> (1) Transacts any business or performs any character of work or service in the State;

7

(2) Contracts to supply service or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997). Pursuant to subsections (c)(1)-(3) and (c)(5)-(6) of the long arm statute, specific jurisdiction may be established if the cause of action arises from contacts with the forum. See Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1466 (D. Del. 1991). Subsection (c)(4), which provides for general jurisdiction, requires a greater number of contacts but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. See id. In the case at bar, plaintiff avers that subsections (c)(1) and (c)(4) of the long arm statute give this court personal jurisdiction over defendant. (D.I. 13 at 7)

### 2. Plaintiff's assertions

In addition to the allegations contained in her complaint, plaintiff has submitted an affidavit "detail[ing] [defendant's] contacts with Delaware including his business trip to Delaware and his repeated contacts with Delaware residents and businesses, including the tortious acts complained of" in the suit at bar. (D.I. 13 at 6; see also D.I. 14) The affidavit contains copies of several e-mails between plaintiff and defendant discussing matters related to the Gallery, including preparation for and promotion of the August 21 show.[7] (D.I. 14, exs. A-F) The record also reveals that defendant attached a brochure for the August 21 show to a July 31, 2004 e-mail sent to plaintiff and a number of other people. (D.I. 14, ex. G) Plaintiff has submitted two mass e-mails, dated July 31 and August 13, 2004, that she sent to her colleagues in order to advertise the upcoming show at the Gallery. (D.I. 14, ex. H) Plaintiff, who was still in Delaware at that time, avers that "[m]any of the people to whom [she] sent the invitation were residents of the [S]tate of Delaware," and that defendant had "requested that [she] send this [e-mail invitation] out to potential guests or buyers from [her] own list of colleagues." (D.I. 14 at ¶¶ 10-11)

In her affidavit, plaintiff asserts that, "[b]etween July 15 and July 31, 2004, [defendant] enlisted the services of Cathy Traynor at Traynor Kirk & Co.," an advertising agency located in Wilmington, Delaware, "to develop a name for a show at the Gallery. The name conceived by Traynor Kirk & Co., Pros Unveiled, is a name [defendant]

---

[7]The e-mails in question were sent on April 23, June 5, August 3, August 5 (three e-mails bear this date), August 16, September 14, and September 15, 2004. (D.I. 14, exs. A-F)

9

adopted for the entire Gallery." (Id. at ¶¶ 11, 12) Plaintiff has also submitted copies of several pages from the Gallery's website, which allows its users to view defendant's artwork and purchase it online. (Id. at ¶ 13 & ex. I)

### 3. Analysis

Defendant sought and received the benefit of professional services performed by plaintiff while she was residing in the State of Delaware; he likewise took advantage of plaintiff's Delaware residency, including some of the professional contacts she made while teaching there, in order to promote his business to other citizens of Delaware, who could then purchase artwork from defendant's interactive website. Having considered plaintiff's allegations of jurisdictional fact and the exhibits submitted in connection with her affidavit, the court finds that, during the time period in question, defendant transacted business within the State of Delaware sufficient to bring him within the reach of 10 Del. C. § 3104(c)(1).[8] The court is likewise satisfied that defendant "[had] certain minimum contacts with [the State] such that the maintenance of [plaintiff's] suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The court, therefore, will deny defendant's motion to dismiss for lack of personal jurisdiction.

### B. Venue

Venue in the case at bar is governed by 28 U.S.C. § 1391(b), which provides, in pertinent part, that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . a judicial

---

[8]Having found personal jurisdiction under § 3104(c)(1), the court need not address plaintiff's arguments under § 3104(c)(4).

10

district in which a substantial part of the events or omissions giving rise to the claim occurred." Id. § 1391(b)(2). Defendant argues that the proper venue for plaintiff's claims is in California, where "the vast majority of the alleged events that gave rise to [plaintiff's] cause of action occurred." (D.I. 10 at ¶ 7) Section 1391, however, "only requires a 'substantial part' of the events to have occurred in [this] [d]istrict to establish venue. It does not require a majority of the events to take place here, nor that the challenged forum be the best forum for the lawsuit to be venued." Park Inn Int'l v. Mody Enters., Inc., 105 F. Supp. 2d 370, 376 (D.N.J. 2000) (citing Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir.1994)). According to the United States Court of Appeals for the Second Circuit,

> "[s]ubstantiality" for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts. See Gulf Ins. Co. v. Glasbrenner, [417 F.3d 353, 357 (2d Cir. 2005)]; Cottman Transmission Sys. v. Martino, [36 F.3d 291, 295-96 (3d Cir. 1994)] ("In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute."). When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed "significant" and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue. See Jenkins Brick Co. v. Bremer, [321 F.3d 1366, 1372 (11th Cir. 2003)] (explaining that substantiality requirement of § 1391(b)(2) requires consideration only of acts or omissions that "have a close nexus to the wrong").

Daniel v. Am. Bd. of Emergency Medicine, 428 F.3d 408, 432-33 (2d Cir. 2005).

"The 'substantial part of the events' standard 'is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.'" Park Inn Int'l, 105 F. Supp. 2d at 376 (quoting Cottman, 36 F.3d at 294). In the case at bar, "[t]he issue of fairness to defendant has already been

11

discussed in connection with the issue of personal jurisdiction," and defendant "cannot claim that [Delaware] has 'no real relationship to the dispute.'" Id. Plaintiff has alleged that, on numerous occasions, defendant contacted her in Delaware and sought her assistance with business matters. Likewise, plaintiff avers that she and defendant first began discussing the possibility of a business partnership while she was still in Delaware, and that defendant asked her to use her business contacts to solicit possible business for the Gallery from people within the State of Delaware. Based on these factual allegations, the court is satisfied that "a substantial part of the events or omissions giving rise to [plaintiff's] claim" occurred within plaintiff's chosen venue, the State of Delaware. Defendant's motion to dismiss pursuant to Rule 12(b)(3), therefore, is denied.

### C. Motion for Protective Order

On April 5, 2007, after receiving notice that plaintiff intended to depose him and his wife in their home state of California, defendant filed a motion for a protective order "allow[ing] the deposition of [defendant] and his wife, Joan Huaag Liu, to proceed via video conference provided that [p]laintiff's attorney conducting the deposition and [d]efendant's attorney remain in Delaware, or, in the alternative to require [p]laintiff . . . to pay the reasonable travel expenses for [d]efendant's counsel to attend the deposition in California." (D.I. 38)

Under Fed. R. Civ. P. 26(c),

> [u]pon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to

12

> protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Id. In addition, the court may place limits on "[t]he frequency or extent of use of the discovery methods otherwise permitted under these rules . . . if it determines that: [] the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (internal citations omitted).

Defendant "submit[s] that it is significantly less expensive and less burdensome to have the depositions of [d]efendant and his wife conducted by video conference. Should [p]laintiff's counsel conduct the deposition in person in California, [d]efendant would incur significant expenses in order to have his Delaware counsel attend the deposition." Defendant, therefore, "submit[s] that in order to ensure fairness in the discovery process, both parties' attorneys should conduct the video conference from Delaware." (D.I. 38 at ¶¶ 9, 10) Plaintiff opposes this proposition, arguing that "[t]here is no reason to require that [p]laintiff be hampered by artificial conditions unilaterally

13

imposed by [d]efendant to prevent [p]laintiff's counsel from taking a face-to-face deposition of [defendant]." (D.I. 39 at 10)

Plaintiff has made arrangements to depose defendant and his wife in a location near their home; this is in line with the "general presumption that a defendant's deposition will be held in the district of the defendant's residence." 6 Moore's Federal Practice - Civil § 26.105(3)(b) (2007). In the United States, litigants generally bear their own expenses and attorneys' fees. See Ford v. Temple Hosp., 790 F.2d 342, 346 (3d Cir. 1986) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 258-59 (1975)). Should defendant ultimately prevail, he may seek an award of attorneys' fees and expenses under 17 U.S.C. § 505;[9] however, the possibility that plaintiff's desire to conduct these depositions in California might not be the most cost-effective method for defendant does not make it so significant an injury as to warrant the imposition of a protective order.

The court finds that defendant has failed to show good cause for the imposition of a protective order; for that reason, defendant's motion (D.I. 38) will be denied.[10]

## V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is denied. Defendant's motion for a protective order is denied, and plaintiff's motion to strike defendant's reply brief is denied as moot. An appropriate order shall issue.

---

[9]"In any civil action [involving copyright infringement], the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

[10]Plaintiff's motion to strike defendant's reply brief is denied as moot. (D.I. 41)

14